## MONTAGUE v. STELTS.

1. Findings of Fact concurred in by referee and Circuit Judge, and supported by testimony, approved.

2. Bailee—Collaterals—Diligence.—Where a creditor receives from his debtor, as collateral security, claims against third persons, the creditor becomes a bailee, and must use ordinary diligence, such as persons usually exercise in reference to their own matters, in endeavoring to collect the collaterals; and is responsible for losses resulting from his failure so to do.

3. Ibid.—Ibid.—Ibid.—Action.—In such case the debtor is not compelled to claim damages for the negligent loss by separate action or counter-claim, but may interpose it as a defence to an action by the creditor, and, under such defence, require an accounting for the collaterals deposited.

4. Commencement of Action.—An action is commenced when the summons is lodged with the sheriff with the intent that it shall be actually served.

5. Note and Mortgage—Attorneys' Fees.—Defendant gave two notes, stipulating for the payment, also, in the event of suit, of "attorneys' fees to the extent of ten per cent. of amount due at time of suit," and a bond of same, date conditioned for the payment of said two notes according to their "tenor, true intent, and meaning," and then a mortgage of same date, to secure the payment of this bond, containing a covenant "to pay all attorneys' fees and commissions at the rate of ten per cent. on the amount for which such foreclosure may be had." *Held*, that defendant was liable for

ten per cent. of the amount due when action was instituted, as called for by the notes, and not for only ten per cent. of a less amount for which foreclosure was ordered, there having been intermediate payments.

6. APPLICATION OF PAYMENT.—Where the mortgagor transferred to the mortgagee rent liens on crops of the mortgaged premises, the mortgagee may apply the proceeds of collection to unsecured claims held by him against the mortgagor, the mortgagor having given no directions as to the application, and the mortgage not covering rents and profits.

Before HUDSON, J., Abbeville, January, 1892.

This was an action by C. L. Montague & Co. against Ina H. Stelts and others. The master's report, omitting his recital of the notes, bond, mortgage, and agreement, which are sufficiently stated in the opinion, was as follows:

The rent contracts were accordingly delivered to the attorneys of Montague & Co., but there was no written assignment of them. During the fall of 1890, and up to March, 1891, collections were made of the rent to the amount of $700. The contracts amounted to $951.20. Mrs. Stelts claims in her answer that the whole indebtedness to plaintiffs was satisfied by the assignment of these rent contracts, and that the failure to collect the full amount of said contracts was owing to the want of due diligence on the part of plaintiffs.

It is evident that the parties, at the time when the agreement was made, in pursuance of which the rent contracts were assigned to plaintiffs, were looking at the matter from different standpoints. Mrs. Stelts apparently considered the compromise of February 16, 1889, still of force, and that the amount she was bound for under that compromise was $925, which would be more than covered by the rent contracts for $951.20. Granting that her assumption, that her debt was only $925, was correct, she overlooked the fact that it bore ten per cent. interest, which in a year's time would increase it to $1,017.50. I do not think the view can be sustained, that she assigned the rent contracts, and that the plaintiffs accepted them in payment of the debt, and, unless the transaction amounted to that, she is still liable, in the most favorable view of the case, for the balance of the $925, with interest.

26—37

But the agreement of February 16, 1889, stipulated expressly that the $925 was to be paid on December 1, 1889, and the failure to pay on that day remitted the parties to their respective rights and liabilities on the contracts, which were included in, and sought to be settled by, that agreement, except as to the application of the payment of the $325, which it was stipulated should stand. That agreement expired by its own limitation, or, at most, the right to continue it was with Montague & Co., after December 1, 1889. That they did not elect to continue it, is shown by the fact that they brought suit within the month for the collection of the notes and a foreclosure of the mortgage. So, when Mrs. Stelts was negotiating with them to allow the matter to stand for another year, unaware, as she was, that they had already brought suit, she had in view the compromise, while they, supposing that she had been served with the papers in the case, and, therefore, knew their position, intended only to let the suit stand over for another year. This view of the case reconciles perfectly any apparent conflict in the testimony of Messrs. Cothran and Graydon. That Montague & Co. had the right to treat the compromise agreement as ended by the failure of the defendants to pay on December 1, 1889, and, that they did so treat it, cannot, I think, admit of question.

Mrs. Stelts' liability must be determined, then, with reference to the notes and mortgage. The amounts collected on the contracts assigned to plaintiffs have been credited by them on the notes. She claims that the whole amount of said rent contracts could have been collected by the use of due diligence on the part of plaintiffs, and the balance of $251.20 uncollected thereon should be credited on her indebtedness. The contracts of two colored men, Harris and Washington, amounting to $500, were collected in full. It does not appear that the crops of Ellis and Spruell were exhausted by the payment of the $200 collected for them. I am inclined to the opinion, that proper measures at the right time would have resulted in larger collections from them. The question is, whether the plaintiffs should be held liable for failure on their part so to collect. Their liability, as holders of collateral security, was

that of bailees. They were bound to use such diligence and care as a prudent person would ordinarily use in his own affairs. I do not think that the proof shows that they did so. Their agent visited the premises once, and saw all the tenants but one. This was proper and necessary, in order to give them notice. In obedience to such notice, two of the tenants promptly paid the whole of their rent. One of the others paid $100 on December 19, while the remaining paid nothing till the following March, and then, apparently, at the instance of the husband of Mrs. Stelts. I do not think it was sufficient mark of diligence merely to write these two men letters, which plaintiffs did. A more effective, while equally as plain and easy, remedy was through the sheriff's office, and, if plaintiffs had any misgivings as to their right to adopt that course, as holders of the rent liens, Mrs. Stelts was near by, and ready, doubtless, to lend the sanction of her name to such a proceeding. It would have been ordinary diligence on the part of the plaintiffs to have given her notice. There is no proof that they did so.

It will not do to say it was more Mrs. Stelts' interest than plaintiffs to collect the rent. She had intrusted her liens to them, and they had accepted them. If they could not, or would not, collect with the papers, certainly she could not do so without them. The very purpose for which the liens were transferred to them was that they might collect the rent and apply to their debt, and they recognize this in their letter already recited. I think they should be charged with the $251.20 as of the 1st of January, 1891, and I have done so accordingly.

The note set up in the second cause of action has been paid in full, since the suit was commenced, by the application thereto of part of the rents collected by plaintiffs. It requires no further notice in this report, except the ascertainment of attorneys' commissions. Each of said three notes, and the mortgage given to secure the two first mentioned, contains an agreement to apply ten per cent. on the amount due at the time of suit as attorneys' fees. On the note set forth in the second cause of action, there was due at the time the suit was

commenced the sum of $132.25, which would make the attorneys' fee thereon, at ten per cent., amount to $13.23. This is not covered by the mortgage. Of the two notes set forth in the first cause of action, there was due on the first one, at the time of the commencement of this action, the sum of $619.84, which would make the attorneys' fees on each the sum of $61.98, or, in the aggregate, $123.96, which amount should be added to the mortgage debt. I have calculated interest up to the 15th October, 1891.

On the first of the notes secured by the mortgage, I find due the sum of...................... $112 11

On the second note secured by the mortgage, I find due, January 1, 1891 ............. ......$664 16

Deducting balance of rent......................... 251 20

$412 96

Interest to October 15, 1891, at eight per cent.,  26 15—$439 11

$551 22

Add attorneys' fee as above ...................... 123 96

Amount due on plaintiffs' mortgage............. $675 18

The bond secured by prior mortgage in favor of D. W. Henry, as set forth in the complaint, has been presented by Dr. Henry. I find due thereon the sum of $2,934.52.

I find as matters of fact:

1. That plaintiffs entered into an agreement with the defendants, J. H. Holcomb and Ina H. Stelts, on February 16, 1889, for a compromise of matters between them, by which $325 was paid cash by said defendants, and the sum of $925 was agreed to be paid by them on December 1, 1889, in full of all demands specified in said agreement as held by plaintiffs against them.

2. That it was expressly declared in said agreement that on failure of defendants to pay said sum of $925 when due, the plaintiffs might collect all that was due them on the said demands after the application of the payment of $325 as agreed upon.

3. That defendants failed to pay the said sum of $925 when

due, and thereupon the plaintiffs brought suit for the collection of the whole amount due them on the aforesaid demands, and thereby elected to treat the compromise agreement as at an end.

4. That after said failure to pay, and after said suit was commenced, but without knowing it was commenced, the defendant, Mrs. Stelts, proposed to assign to plaintiffs certain rent contracts of the value of $951, in consideration that plaintiffs would allow the matter to stand just as it was for another year, having reference to the extension of the time for the payment of the sum agreed upon in the compromise to another year.

5. That plaintiffs accepted the proposition for the assignment of the rent contracts, and agreed to allow the matter to stand just as it was for another year, believing that Mrs. Stelts had been served with summons in this action, and having reference to the prosecution of the suit, which was to stand as it was for another year.

6. That thereupon said rent contracts were delivered by the defendant, Mrs. Stelts, to the plaintiffs, and that each party was laboring under an honest mistake as to the meaning and intention of the other party.

7. That said rent contracts became, in the hands of plaintiffs, collateral security to the debt of defendants.

8. That plaintiffs collected on said rent contracts the sum of $700, and applied the same to the debt of defendants.

9. That plaintiffs did not use due diligence for the collection of the balance of $251.20 on said collaterals.

10. That the amount due on the mortgage debt of plaintiffs, including interest to October 15, 1891, is the sum of $551.22, together with an attorneys' fee of $123.96 (being ten per cent. of the amount due on said mortgage debt at the time of suit), making the whole amount due under said mortgage the sum of $675.18.

11. That the amount due on the second cause of action set forth in the complaint is an attorneys' fee of $13.23.

12. That there is due on the mortgage of D. W. Henry the sum of $2,934.52, including interest to October 15, 1891; said mortgage is senior to plaintiffs' mortgage.

As conclusions of law :

1. That plaintiffs are liable to defendant, Mrs. Stelts, for the sum of $251.20, which they failed to collect on said rent contracts from want of due diligence. Said sum has been allowed as a credit in the ascertainment of the amount due on the mortgage debt of plaintiffs.

2. That the defendants, J. H. Holcomb and Ina H. Stelts, are liable to plaintiffs on the two notes secured by mortgage for the sum of $675.18, and that plaintiffs are entitled to judgment of foreclosure for that amount.

3. That said defendants are liable on the notes set forth in the second cause of action for $13.23, and plaintiffs are entitled to judgment therefor.

4. That the defendant, Ina H. Stelts, is liable on the mortgage of D. W. Henry for the sum of $2,934.52, and that said mortgage has priority over the mortgage of plaintiffs.

Exceptions taken by both parties to this report were overruled, and the report was confirmed. Both parties appealed. The plaintiffs' exceptions were as follows:

I. In overruling plaintiffs' exceptions to the report of the master, which were as follows: "In holding that plaintiffs did not use due diligence for the collection of the balance of $251.20 on said collaterals. That plaintiffs are liable to the defendant, Mrs. Stelts, for the sum of $251.20, which they failed to collect on said rent contracts from want of due diligence. Said sum has been allowed as a credit in the ascertainment of the amount due on the mortgage debt of plaintiffs."

II. Because the presiding judge erred in holding under the pleadings and testimony in this case that the plaintiffs had not exercised sufficient diligence in the collection of the collateral securities, and that they should be charged with the amount uncollected, namely, $251.20. *a.* Such negligence not having been set up either by way of defence or by counter claim for damages. *b.* There being no evidence that the negligence of plaintiffs has caused a loss of the securities.

The defendant also appealed on eighteen exceptions, eleven of which alleged errors in findings of fact. The others were as follows:

I. Because his honor erred in overruling the following exceptions filed by the said defendant, Ina H. Stelts, to the master's report: 3. Because the master erred in his construction of the agreement for compromise set forth in the evidence, in that he held that the defendant, Ina H. Stelts, was liable for anything under her mortgage, except the $925 mentioned therein. 7. Because the master having found as matter of fact that the notes in suit provided for ten per cent. attorneys' fees upon the amount due at the time suit was commenced, it was error in him to hold that the plaintiffs were entitled to recover attorneys' fees upon any amounts except the amount due at the time the summons was served on Mrs. Stelts, on the day of June, 1891. 8. Because the time of the commencement of a suit is the time of the service of the summons upon the defendant, and the plaintiffs had no right, under the terms of the notes, to recover anything for attorneys' fees, except ten per cent. upon the amount due on the notes by the defendant, Ina H. Stelts, at the time the summons was served upon her. 13. Because, even according to the view of this case taken by the master, that Mrs. Stelts understood that the payment of the $925 was to stand another year, and that the plaintiffs understood that the suit for foreclosure was to stand as it was for another year, the master should have held that all sums realized from these rent liens by the plaintiffs, to wit, $951, should have been applied to the payment of the amount due upon the mortgage debt. 15. Because, the evidence being that all of the money paid to plaintiffs by Mrs. Stelts, to wit, $951, was the proceeds of rent liens upon crops raised on the mortgaged premises, it was error in the master not to hold that the plaintiffs were bound to apply the proceeds thereof to the payment of the mortgage debt. 16. Because the master erred in finding, as matter of fact, that the rent contracts became collateral security in the hand of plaintiffs, when he should have held that they operated as payment of all debts due by the defendants to plaintiffs.

II. Because the mortgage on which the action was brought expressly provides that the said defendant shall pay attorneys' fees and commissions at the rate of ten per cent. on the amount

for which foreclosure may be had, and it was error in his honor to allow more than ten per cent. for the amount for which he granted foreclosure, to wit, the sum of five hundred and fifty-one dollars and twenty-two cents.

*Messrs. Perrin & Cothran,* for plaintiffs.

*Messrs. Graydon & Graydon,* contra.

September 22, 1892. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. The plaintiffs brought this action to foreclose a mortgage of real estate, given by the defendant, Ina H. Stelts, to secure the payment of two notes; and, as a second cause of action, set out another note, not embraced in the mortgage, and claimed judgment for the balance due thereon. The defendant, Dorcas W. Henry, who, as the holder of a senior mortgage on the same land, was made a party, whose rights do not appear to be contested, and the defendant Holcomb, who also signed the notes, made no answer; but the defendant Ina answered, claiming that the said notes had been satisfied in full by compromise with plaintiffs, the details of which are set out in her answer. The testimony tends to show that the notes sued on each contain the following stipulation: "And in the event of suit, I agree to pay attorneys' fees to the extent of ten per cent. of amount due at time of suit." It seems that on the same day the two first notes were executed, the defendant Ina executed her bond to plaintiffs, conditioned for the payment of the notes, "according to the tenor, true intent, and meaning of" said notes, which bond was secured by the mortgage sought to be foreclosed, in which the stipulation as to attorneys' fees is expressed as follows: "But should the said C. L. Montague & Co., their heirs or assigns, prefer to foreclose this mortgage by due course of law, I, the said Ina H. Martin (Stelts), agree to pay all attorneys' fees and commissions at the rate of ten per cent. on the amount for which such foreclosure may be had."

Some time in November or December, 1888, these papers were sent by plaintiffs to Messrs. Perrin & Cothran, attorneys at law,

for collection, who, by the authority of the plaintiffs, entered into a written agreement with the defendants, Ina H. Stelts and Holcomb, for a settlement of these notes, as well as certain open accounts, a copy of which is set out in the "Case," which agreement bears date 16th of February, 1889. By the terms of this agreement, the said defendants were to pay the sum of $325 in cash, which was to be applied first to the open accounts, and the balance to the note above mentioned, as not included in the mortgage; and this amount was paid and applied accordingly, leaving a balance due on said note; and as a full settlement of the said balance, as well as of the notes secured by the mortgage, the said defendants were to pay to plaintiffs on the 1st of December, 1889, the sum of $925, and if the same is not paid when due, the plaintiffs "shall have the right to collect all that may be due them by and under the said notes and accounts, irrespective of this agreement, except as to application of payment of $325." And the said defendant Ina "agrees that the mortgage heretofore given to secure the two first notes above referred to shall not in anywise be affected by this agreement, but that the same shall continue of force as security for the payment of said $925, as aforesaid, and for the payment of the whole amount due, in case said sum in compromise is not paid when due."

This amount not having been paid when due, the plaintiffs commenced this action by lodging the summons and complaint, with copies thereof, with the sheriff, for service, on the 19th of December, 1889, upon which "the sheriff made return of service upon the defendants, Ina H. Stelts and John H. Holcomb, as of date December 20th, 1889," the other defendant being served some time in the same month. On the 29th of May, 1891, the defendant Ina served a notice of a motion for leave to answer, alleging that she had never been served. This motion having been granted, she was served on 8th June, 1891, and filed her answer on the 15th of that month. After the suit had thus been commenced, further negotiations were had between the parties, which resulted in a verbal agreement, as to the terms of which there is some apparent conflict in the testimony, though we agree with the master that this apparent conflict

27—37

may be reconciled in the manner suggested in his report, which should accompany the report of this case.   The arrangement, as understood by the plaintiffs, was that if the defendants would turn over to plaintiffs certain obligations for the rent of the mortgaged premises for the year 1890, amounting to $951.20, the matter should stand as it was, and no further steps taken in the suit until saleday in December, 1890, while the defendant seems to have understood that these obligations for rent would be accepted by plaintiffs in full satisfaction of the $925, agreed to be paid by the compromise in writing, hereinbefore referred to, of date 16th of February, 1889.

These rent contracts, as they are called, were turned over to the attorneys for plaintiffs, who collected upon them the sum of $700, and applied the same first to the balance due upon the unsecured note, and next to the first note secured by the mortgage, leaving a balance due on that note, as well as the whole amount of the second note secured by the mortgage.   The master seems to have adopted the view contended for by plaintiffs, and finding that the rent contracts were delivered to the plaintiffs as collateral security for the debt due them by defendants, held that they were bound to use due diligence in collecting the amounts due on the rent contracts, and not having done so, defendants were entitled to a credit for the amount not collected, viz., $251.20.   He also held that the plaintiffs were entitled to ten per cent. commissions on the amount due at the time of the commencement of this action, which he seems to have fixed as the 19th of December, 1889, and making the calculation upon this basis, he found that the plaintiffs were entitled to judgment of foreclosure for $675.18, and to a personal judgment for $13.23.

To this report both plaintiffs and the defendant, Ina H. Stelts, excepted, upon the grounds set out in the "Case," and the case coming before his honor, Judge Hudson, he rendered judgment, overruling all of the exceptions and confirming the report of the master.   From this judgment both parties appeal, upon the several grounds set out in the record.

We will first consider the questions raised by the plaintiffs' exceptions.   First, was there any error in finding as matter of

fact that the plaintiffs had failed to use due diligence in collecting the amount due on the rent contracts lodged with them as collaterals. So far as this presents a question of fact, we could not, under the well settled rule, disturb the conclusion reached by the concurring judgment of the master and the Circuit Judge, where there is, as we think there is, testimony sustaining such conclusion. Mr. Cothran, with commendable candor, says: "I didn't make all the effort to collect it that I would have made if it had been my own matter;" though it is due to that gentleman to add that, according to his view, it was not his duty to do so, and that it was more the duty of defendants, who were most interested, to press the collection. This, we think, was a mistaken view. When a creditor receives from his debtor notes or other securities as collaterals, he becomes a bailee of such securities, and as such he is bound to use ordinary diligence, such as persons usually exercise in reference to their own matters, in endeavoring to collect such securities, unless there is an express agreement relieving him of such obligation; and here there is no evidence of any such agreement. See 18 Am. & Eng. Enc. Law, 643.

It is contended, however, by plaintiffs, that the alleged negligence of the plaintiffs in not collecting the whole amount due upon the rent contracts, not being set up in the answer, either by way of defence or by way of counter-claim for damages, there was error in charging the plaintiffs with the amount uncollected. The assumption that the failure to use due diligence in collecting these rents is not set up by way of defence, is not well founded, as it is expressly alleged in the fifth paragraph of the complaint that the plaintiffs could have collected the whole amount due on the rent contracts if they had used due diligence. The main point of the objection, however, seems to be that negligence should have been set up either by way of a separate defence to the action or by a counter-claim for damages resulting from plaintiffs' negligence. It seems to us, however, that the true rule is, that where the creditor receives from his debtor either notes or obligations of any kind of third persons, as collateral security for the pay-

ment of his debt, he cannot, in the absence of an express agreement to the contrary, maintain his action for the recovery of his debt without accounting for the collaterals by showing either that he has collected them, and applied them as credits on the debt, or that he could not, by the use of due diligence, collect them. We do not think there was any error, therefore, in charging the plaintiffs with so much of the collaterals as they failed to collect by reason of their failure to exercise due diligence; there being no evidence that they could not be collected by the use of due diligence.

We come, then, to the questions presented by the defendants' exceptions. So far as these exceptions present questions of fact, we think they are concluded by the concurrent findings of the master and the Circuit Judge; for there certainly was testimony to support such findings, and, we think, ample for that purpose.

As to the question, when the action was commenced, we think it is conclusively determined by the express terms of section 120 of the Code, which declares that an attempt to commence an action by delivering the summons to the sheriff, with the intent that it shall be actually served, is deemed equivalent to the commencement of an action. See, also, *Cureton* v. *Dargan*, 12 S. C., 122. Here, the undisputed fact is, that the summons and complaint were delivered to the sheriff on the 19th of December, 1889, and there can be no doubt that this was done with the intent that these papers should be actually served, for the sheriff proceeded to make the service, and made return thereof on the next day, and the plaintiffs proceeded under the belief that all the parties had been actually served. There is no doubt, therefore, that the action was then commenced.

The next inquiry is, whether there was error in charging the ten per cent. commissions on the amount due when the action was thus commenced. If we look alone to the terms of the notes, there can be no doubt that the plaintiffs were entitled to the ten per cent. on the amount due at the time of the commencement of the action, for that is in accordance with the express stipulation contained in the notes.

But it is contended that, inasmuch as the mortgage contained a somewhat different stipulation as to the ten per cent. commissions that should govern, and the ten per cent. could be charged only on the amount for which judgment of foreclosure was had, which was less than the amount due when the action was commenced, by reason of the fact that certain payments were made after the action was commenced, and before the judgment of foreclosure was obtained, from the collections made on the rent contracts. It will be remembered, however, that the notes constituted the evidence of the debt, and the mortgage was a mere accessory, designed to secure the payment of what was really due on the notes; and to them, therefore, must we look to ascertain the amount due. In addition to this, it will be observed that the bond which the mortgage was given to secure was conditioned for the payment of the notes, "according to the tenor, true intent, and meaning of" the said notes. So that, we think, there was no error in computing the ten per cent. commissions on "the amount due at the time of suit."

The only remaining inquiry is, whether there was error in holding that the plaintiffs had the right to apply the proceeds of the rent liens to the unsecured note. While it is quite true that the rule is, that where a creditor holding a mortgage on property, to secure the payment of his debt, is bound to apply the proceeds of the sale of the mortgaged property to the mortgage debt, without any directions to that effect from his debtor, as was held in *Thatcher* v. *Massey*, 20 S. C., 542, and *Ellis* v. *Mason*, 32 *Id.*, 280, yet here it was not made to appear that the money applied to the unsecured note was derived from the sale of the mortgaged property; nor does it appear that the mortgage covered the rents and profits of the land embraced in the mortgage. We do not think, therefore, that any error has been shown in regard to the application of the money derived from the rent contracts.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.