## 9470

### McSWEEN v. WINDHAM *ET AL.*

#### (89 S. E. 500.)

1. MORTGAGES — DURATION OF LIEN — WRITTEN ACKNOWLEDGMENT OF DEBT.—Under Civ. Code 1912, sec. 3535, establishing a 20-year limitation on mortgage liens, unless during the continuance of the lien a written acknowledgment of the debt be recorded upon the mortgage record, a written acknowledgment, recorded one month and nine days after expiration of the 20 years, does not remove the bar of the statute.

2. LIMITATION OF ACTIONS—REMOVAL OF BAR—WRITTEN ACKNOWLEDGMENT OF DEBT.—Under Civ. Code 1912, sec. 3535, a note is not barred by limitations until 20 years after its maturity; and a written acknowledgment of the debt recorded within 20 years after such maturity prevents the operation of the statute for 20 years thereafter.

3. Mortgages — Foreclosure — Limitations. — An action commenced December 9, 1905, on a note and mortgage executed January 5, 1886, *held* not barred by the 20-year limitation statute (Civ. Code 1912, sec. 3535).

4. Payment — Application — Discharge of Liens and Mortgages.— Where property or the proceeds arising therefrom are received by a lienholder, the law makes application thereof to the lien indebtedness.

5. Mortgages—Application of Payment—Discharge of Liens.—Where a mortgage is given to secure the payment of more than one debt, proceeds received by the lienholder must be applied *pro rata*.

6. Mortgages—Rents and Profits—Application.—Where the mortgagee held two mortgages on land, but made no application thereto of rents and proceeds received by him, *held,* that such proceeds should be applied *pro rata* on each indebtedness, notwithstanding, on the commencement of the foreclosure action, the senior mortgage was barred by limitations, the note it secured not being barred.

Before Wilson, J., Darlington, November, 1914.   Modified.

Action by John McSween against Annie Windham and others. · Judgment for defendants, and plaintiff appeals.

The following is the report of the Hon. Thos. H. Spain, master :

The above entitled case was referred to me by an order bearing date April 3, 1911, to take testimony and determine the law and facts, and report my findings of law and fact to the Court.   In compliance with the terms of the said order, I held several references and took the testimony, which is herewith reported.   There was some doubt under the terms of the order of reference whether the question of title was submitted to me, but it was agreed that under the above order of reference all issues raised by the pleadings should be determined by me.

The plaintiff on October 30, 1905, commenced this action for the purpose of foreclosing a mortgage given to secure a promissory sealed note of one Reuben J. Windham, bearing date the 5th day of January, 1886, and matured November 1, 1886.   Thereafter, on December 16, 1905, the complaint was amended for the purpose of forclosing a mortgage given to secure a promissory sealed note, bearing date the 7th day

of November, 1884, and matured November 1, 1885, of the said Windham. The complaint alleges that the said mortgages were given to the plaintiff by Reuben J. Windham, who departed this life intestate on or about the 5th day of October, 1894, leaving the said defendants as his heirs at law; that on April 7, 1900, Elizabeth Jordan conveyed, or attempted to convey, her interest in and to the said land to D. C. Watford, which deed was made subject to the liens of the said mortgages; that on October 28, 1904, the defendants partitioned the land among themselves; that on January 11, 1887, the said Reuben J. Windham, in writing, admitted the debts due upon said mortgages; that the condition of the said notes and mortgages have been broken and prays that the mortgages be foreclosed.

The defendants, in answer to the complaint, admit that they are heirs at law of Reuben J. Windham, but claim that they are the owners of said land as remaindermen under a deed made by Mary Windham on the 25th day of March, 1881; that the said mortgages are not liens on the land; that the defendant, D. C. Watford, is a *bona fide* purchaser for value of the interest of the defendant, Elizabeth Jordan; the defendants admit the partition among themselves, as alleged in the complaint, and deny that the land partitioned is subject to the liens of said mortgages; they allege that the said mortgage debts have been fully paid, and, lastly, they plead the statute of limitations. It is also contended by the defendants that the plaintiff is estopped.

The issues between the parties are practically these: (1) What estate was conveyed to R. J. Windham by the deed of the said Mary Windham? (2) Are the mortgage debts barred by the statute of limitations? (3) Are the mortgage debts paid? No payments were alleged to have been made in the complaint, but the plaintiff admits the payments hereinafter referred to.

I find from the testimony the following facts:

(1) That since the commencement of this action some of the original defendants have died and the said action has been revived against their heirs at law, and that all the necessary parties are before the Court.

(2) That Mary J. Windham conveyed to Reuben J. Windham, by deed, the tract of land covered by the said mortgages on the 25th day of March, 1881, which was duly recorded, and the title to the land was in him at the date of his death.

(3) That on the 7th day of November, 1884, the said R. J. Windham gave to the plaintiff his sealed note, with interest, from date at 10 per cent., payable November 1, 1885, amounting to seven hundred and fifty ($750) dollars, and, for the purpose of securing the said note, gave to the plaintiff a mortgage on the 7th day of November, 1884, on the said land for the purpose of securing the debt evidenced by said note, and said mortgage was recorded December 9, 1905.

(4) That on the 5th day of January, 1886, the said R. J. Windham executed to the plaintiff his sealed note in the sum of three hundred and seventy-seven and 61-100 ($377.61) dollars, with interest thereon, at 10 per cent. per annum, payable on the 1st day of November, 1886, and for the purpose of securing the debt evidenced by said note gave him the mortgage bearing date January 5, 1886, and said mortgage was duly recorded January 13, 1886.

(5) That on the 11th day of January, 1887, the said R. J. Windham gave to the plaintiff the following acknowledgment of the said mortgage debts, to wit:

"The State of South Carolina, Darlington County. Whereas, I am indebted to John McSween by mortgage in the sum of $1,250, and am desirous of making some arrangement by which to pay him:

"Now, in consideration of the premises, I hereby deliver to the said McSween possession of my tract of land, situate in Darlington county, upon which I now reside, and upon

which he holds a mortgage, containing 116 acres, more or less, to hold for his own use and behoof until the rents and profits thereof, after deducting of all expenses, shall have paid in full the said mortgage debt. Witness my hand and seal this 11th day of January, 1887. R. J. Windham (L. S.). In the presence of: A. B. McKenzie, W. C. Garner."

(6) That on the 9th day of December, 1905, the said acknowledgment was recorded in the clerk's office for this county.

(7) That D. C. Watford is the owner of the interest of Elizabeth Jordan in and to the said land, she having conveyed it to him by deed bearing date April 7, 1900.

(8) That under said agreement the plaintiff went into possession of a part of the land and rented it out to tenants, and that he let the mortgagor remain in possession of the other part of the land, and said mortgagor paid plaintiff rent for the same.

(9) I find that the following rents were collected by the plaintiff:

"1887—R. J. Windham, October 3d, $40.63; R. J. Windham, October 11th, $41.25—$81.88.

"1887—W. C. Garner, November 18th, $40.68; December 17th, $21.17—$61. 85. Total for 1887, $143.73.

"1888—R. J. Windham, November 9th, $81.20—$81.20; J. D. Hudson, October 13th, $40.62; J. E. Windham, October 2d, $27.00; J. E. Windham, October 19th, $16.25— $43.25. Total for 1888, $165.07.

"1889—R. J. Windham, September 27th, by I. T. H., $57.20; October 14th, $58.50; November 1st, $2.50—$61.00. Total for 1889, $118.20.

"1890—R. J. Windham, September 5th, $44.81; R. J. Windham, September 17th, $46.62; September 27th, $52.16; October 8th, $42.71—$186.30. Total for 1890, $186.30.

"1891—R. J. Windham, October 20th, $65.95—$65.95.

"1892—R. J. W., December 1st, $42.92—$42.92.

"1893—R. J. W., October 21st, $116.25—$116.25—$838.42."

(10) I find that there was no application made of the rents to either mortgage; the plaintiff testified that they were not credited on the mortgages, but on rent account.

(11) That the mortgagor died on the 23d day of September, 1893, and the plaintiff shortly after abandoned the possession of the land and all claims to the rents and profits thereof, believing that the mortgagor only had a life interest in and to the land mortgaged, and since October 21, 1893, he has received no payments, nor has any demand been made on the heirs at law, or those claiming under them, for payment.

(12) That the debt evidenced by the note bearing date the 5th day of January, 1886, and secured by mortgage of same date was overpaid on the 5th of September, 1890, and the subsequent payments were in excess.

Conclusion of Law.—I hold that the said deed of Mary Windham to R. J. Windham conveyed to him a fee simple estate. *Ex parte Yown,* 17 S. C. 532. My construction of the written acknowledgment is this: That it covered both mortgage debts. The mortgages did not give the mortgagee a right to the possession of the land nor the rents and profits thereof. The possession and its incidents was additional security, and the plaintiff could have retained possession, until the debts were paid by the rents and profits, or otherwise. Justice Jones, in *Francis* v. *Francis,* 78 S. C. 182, 58 S. E. 805, said: "A mortgagee in lawful possession is entitled to retain possession against the mortgagor until it is shown under proper pleadings and proof that the debt has been paid." So a mortgagee can retain possession although the mortgagee is barred by the statute. *Spect* v. *Spect,* 88 Cal. 437, 26 Pac. 203, 13 L. R. A. 137, 22 Am. St. Rep. 314; *Kelso* v. *Norton,* 65 Kan. 778, 70 Pac. 896, 93 Am. St. Rep. 308. The plaintiff being a mortgagee in possession, the legal title to the land did not vest in him, as the mort-

33—104

gages were subsequent to the amendment of the statute in 1879, relative to mortgages, which struck out the words, "and said provision shall not apply when the mortgagor shall be out of possession." *Scates* v. *Henderson,* 44 S. C. 548, 22 S. E. 724. There is no testimony showing that the plaintiff ever abandoned his mortgage securities nor told anybody that he was not going to claim his rights thereunder. In abandoning the possession the plaintiff injured himself by relinquishing his additional security, and I do not see how he is estopped. There is no fraud nor misrepresentations alleged nor proved in this case, and it is not contended that he deceived anybody.

Now, as to the statute of limitation: First, as to the lien of the senior mortgage, section 2449, vol. I, Code 1902, says, among other things: "No mortgage * * * shall constitute a lien upon any real estate after the lapse of 20 years" unless the "holder of any such lien or liens as aforesaid shall, at any time during the continuance of such lien, cause to be recorded upon the record of such mortgage, * * * some written acknowledgment of the debt," etc. Prior to the enactment of said statute, the lien of a mortgage existed as long as the debt remained unpaid. Hill on Mortgages says, "The lien lasts as long as the debt," quoted with approval in *Nichols* v. *Briggs,* 18 S. C. 484. Since the enactment of the statute, parties can preserve the mortgage lien only by complying with the terms of the statute, and as the written acknowledgment was not recorded until one month and nine days after the expiration of 20 years, commencing from the maturity of the said mortgage debt, I hold that the lien of the mortgage is barred. *Lyles* v. *Lyles,* 71 S. C. 391, 51 S. E. 113. As to the note secured by the said mortgage, the note being a "contract in writing, secured by a mortgage of real property," it took 20 years from the date of its maturity to bar it. Section 111, vol. II, of the Code. As the mortgagee acknowledged the existence of the debt on the 11th day of January, 1887, new life was infused into the note,

and it took 20 years from then to bar it. I hold that the said promissory note is not barred. In *Nichols* v. *Briggs, supra,* the note was barred, but not the mortgage; here the mortgage is barred, but not the note. Section 131, vol. II, Code. As to the junior mortgage, I hold that neither note nor mortgage is barred, and, as the mortgage was duly recorded, all of the defendants were charged with notice of its being a lien on the land.

Now, as to the application of payments, that duty devolves on the Court as the parties failed to apply them. We have here the unsecured note and the junior mortgage debt. Whether the unsecured note is a valid claim against the estate of the deceased mortgagor or not will have to be decided in a case brought by plaintiff against the administrator of the deceased mortgagor. Manifestly, these defendants are not personally liable for it, nor is the land in their possession, as the lien of the mortgage is barred. Therefore, with the senior mortgage and note eliminated, the case stands as a foreclosure, pure and simple, for the junior mortgage just as it did before the complaint was amended. The Court cannot apply payments to a debt not established by law, nor to a mortgage barred by the statute. In the case of *Coleman* v. *Coleman,* 74 S. C. 567, 54 S. E. 758, the Court held that a party could not be subrogated to rights of the mortgagee whose mortgage was barred by the statute. The same principle applies here; to apply payments to the senior mortgage would be allowing the plaintiff to foreclose it in this action, to the extent of the payments thus applied. The only debt before the Court to which the payments can be applied is that of the junior mortgage, and applying the payments to it the facts show that it was paid on September 5, 1890, and the subsequent payments amounting to $366.61 are overpayments.

The truth of the whole matter is, the plaintiff acted under a misapprehension of what his legal rights were. He did not know what estate the mortgagor had in the land. He

did not know that the acknowledgment ought to have been recorded within the 20-year limit, and he did not know that he could have applied the rents to either mortgage debt he saw fit. One of the time-honored maxims of the law is *"Ignorantia legis neminem excusat."*

Wherefore, I recommend that the complaint be dismissed with costs.

*Messrs. Robt. Macfarlan* and *E. O. Woods,* for appellants, submit: *That where the debtor failed to make application of payments at the time of payment, and none is made up to the time of judgment or verdict by the creditor, the Court will apply the payments, either to a debt which is unsecured, or to a debt which is barred by the statute of limitations, leaving in force the debt which is not barred by the statute, or which is secured:* 12 S. C. 32; Bailey's Eq. 430; 2 Rich. Eq. 66; 20 S. C. 47; 20 S. C. 548; 61 S. C. 137; 70 S. C. 507; 8 S. C. 165; 25 Cyc. 1380-1381. *That the Court itself, in the absence of an application or direction of payments by either creditor or debtor, will apply the payments on its own motion, will apply payments to the unsecured debt, or to one barred by the statute of limitations:* 96 Am. St. Rep. 67-68. *Then, if the debtor has made no application of the payments, and even had the creditor in this case, who is the plaintiff, lost his opportunity to apply the payments, the Court itself will apply them, under the authorities in this State, to the debt barred by the statute and save to the creditor the debt not barred:* 2 Rich. Eq. 66; Bailey's Eq. 43. *The Court will at least apply the payments, if not wholly to the debt barred, then pro rata to the debt barred and the one not barred:* 8 S. C. 165. As to application of credits by creditor, cite: 20 S. C. 46. *The paper which has been treated as a mere acknowledgment by Windham, as to the existence of the mortgage debts (folios 129-130) of date January 11, 1887, is more than an acknowledgment. It is in the nature of a mortgage, and at the very least was an*

*equitable mortgage creating a new obligation, and creating
a new debt of maturity for the payment of such debts, to
wit: when the "rents and profits thereof, after deducting all
expenses, shall have paid in full the mortgage debt."* 27
Cyc. 976-977; 1 Jones on Mortgages (6th ed.), section 167;
64 S. C. 434; review 71 S. C. 391.

*Messrs. Geo. W. Brown* and *L. M. Lawson,* for respond-
ent. · *Mr. Brown* submits: *"A mortgagee lawfully in pos-
session of mortgaged premises may abandon or surrender
the possession, or what is the same thing, acquiesce in the
possession of the mortgagor or his successors, thereby indi-
cating his surrender of the pledge."* 20 A. & E. Ency. L.
(2), p. 1008; 139 N. Y. 152; 4 McC. 97; 15 S. C. L. 97;
3 Strob. 224; 34 S. C. L. 224; 89 S. C. 395. *Courts can-
not relieve a party from his mistaken construction of a writ-
ten instrument:* 40 S. C. 101; 4 Rich. Eq. 349; 25 S. C.
Eq. 349; 20 S. C. 317. As to application of payments,
cites: 12 S. C. 32; 20 S. C. 34; 42 S. C. 104. *Barred debt:*
2 A. & E. Enc. L. (2d ed.) 458; 26 N. H. 85. *Termination
of lien:* Civil Code, sec. 3535; 71 S. C. 391; 90 S. C. 18.
And further submits: *"To render a power one coupled with
an interest it is essential that the donee have an interest in
the subject matter of the power; the fact that the donee may
have an interest in that which is produced by the exercise of
the power does not render it a power coupled with an inter-
est."* 22 A. & E. Ency. L. 1093, and note 3; 27 S. C. 309;
80 S. C. 163. *There is no testimony tending to show that
any personal representative or heir at law of R. J. Windham
ever made a payment:* 70 S. C. 225.

*Mr. L. M. Lawson,* also for respondent, cites: *As to what
is meant by section 3535, and what is the effect of said sec-
tion upon the facts in this case:* 71 S. C. 391; 31 S. C. 1;
90 S. C. 14; 72 S. C. 179; 87 S. C. 51; 33 S. C. 358; 32 S.

C. 378; 64 S. C. 434. *And as to application of payments:* 74 S. C. 567; 61 S. C. 124.

July 17, 1916.

The opinion of the Court was delivered by Mr. Chief Justice Gary.

This is an action to foreclose two mortgages. The facts are fully stated in the report of the master, which was confirmed by his Honor, the Circuit Judge, and will be reported. The master in his report states that the issues between the parties are as follows: What estate was conveyed to R. J. Windham by the deed of the said Mary Windham? Are the mortgage debts barred by the statute of limitations? Are the mortgage debts paid? The master held that the deed of Mary Windham to R. J. Windham conveyed to him a fee simple estate. There was no appeal from this ruling, and that question is eliminated from further consideration.

He also reported that neither the note nor the mortgage, executed on the 5th of January, 1886, nor the note bearing date the 7th of November, 1884, was barred by the statute of limitations. But he also held that the lien of the mortgage, dated the 7th of November, 1884, was discharged by reason of the plaintiff's failure to comply with the requirements of section 3535 of the Code of Laws 1912. His rulings in these respects were properly sustained by his Honor, the Circuit Judge, for the reasons stated in the report.

This brings us to the consideration of the question whether the mortgage debts were paid.

On the 11th of January, 1887, R. J. Windham executed the following instrument of writing:

"The State of South Carolina, Darlington County. Whereas, I am indebted to John McSween by mortgage in the sum of $1,250, and am desirous of making some arrange-

ment by which to pay him: Now, in consideration of the premises, I hereby deliver to the said McSween possession of my tract of land, situate in Darlington county, upon which I now reside, and upon which he holds a mortgage, containing 116 acres, more or less, to hold for his own use and behoof until the rents and profits thereof, after deducting of all expenses, shall have paid in full the said mortgage debt. Witness my hand and seal this 11th day of January, 1887. R. J. Windham (L. S.). In the presence of: A. B. McKenzie, W. C. Garner."

The sum mentioned in the note and mortgage, executed on the 7th of November, 1884, was $750, and the amount of the note and mortgage, dated the 5th of January, 1886, was $377.61. The intention of the instrument of writing, dated the 11th of January, 1887, was to deliver possession of the mortgaged property, and to subject the rents and profits to the payment in full of the indebtedness secured by both mortgages. This is shown by the fact that the mortgagor stated that he was indebted to the mortgagee in the sum of $1,250 by mortgage, which sum included the amounts due on both mortgages.

When property is covered by a lien, and the property itself, or the proceeds arising therefrom, are received by the party holding the lien, the law makes the application. *Hunter* v. *Wardlaw,* 6 S. C. 74; *Thatcher* v. *Massey,* 20 S. C. 542; *Wilden* v. *Pearce,* 27 S. C. 44, 2 S. E. 709; *Ellis* v. *Mason,* 32 S. C. 277, 10 S. E. 1069; *Montague* v. *Stelts,* 37 S. C. 200, 15 S. E. 968, 34 Am. St. Rep. 736; *Barfield* v. *Coker,* 73 S. C. 181, 53 S. E. 170; *Summer* v. *Kelly,* 38 S. C. 507, 17 S. E. 364. In the last mentioned case, the Court said:

"This Court has never failed to hold that the proceeds of mortgaged property, whether such sale is made by mortgagor or mortgagee, when such proceeds reach the hands of the mortgagee, must be applied by him to the satisfaction in

whole or in part, according to the amount of the payment, of the debt or liability secured by the mortgage."

When the mortgage is given to secure the payment of more than one debt, the proceeds arising therefrom must be applied *pro rata.* This is the general rule when the application is made by the Court. *Jones* v. *Kilgore,* 19 S. C. Eq. (2 Rich. Eq.) 63 ; *Bachman* v. *Sulzbacher,* 5 S. C. 58; *State etc.* v. *R. R.,* 8 S. C. 129. For a stronger reason, this rule should prevail when the application is made by law, as there must necessarily be a fixed and defined rule, and this is the most equitable.

The master erred in not ruling that the payments were applied by law to the two debts, and in proportion to the amounts due under the respective mortgages.

It is the judgment of this Court that the judgment of the Circuit Court be modified, and that the case be remanded to that Court for such further proceedings as may be necessary to carry into effect the conclusions herein announced.

Modified.

Messrs. Justices Hydrick, Watts and Gage, concur in the opinion of the Court.

Mr. Justice Fraser, *concurring.* I concur in this opinion in part only. In 1887, R. J. Windham gave to the plaintiff an informal deed by which he delivered the mortgaged premises "to hold for his own use and behoof until the rents and profits thereof have paid in full said mortgage debt." The debt referred to was the full $1,250. This action was commenced in 1905, within 20 years. This paper was informal, but a paper that is intended to secure a debt is a mortgage. It makes no difference what may be its form. If it had been a deed absolute, on its face, it would still have been construed a mortgage. If a paper intended as security

for a debt is a mortgage, then this paper, supplemented by delivery of possession, seems to me is clearly a mortgage. That paper is dated 1887, and this action commenced in 1905, seems to me clearly within time; and the entire debt is secured by mortgage and the foreclosure should be for the entire debt.